Ronald W. ROBINSON, Plaintiff,

v.

ALASKA PROPERTIES AND INVEST-MENT, INC., and Han K. Pang, d/b/a Leroy's Family Restaurant, Defendants.

ALASKA PROPERTIES AND INVESTMENT, INC., Third Party Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Third Party Defendant.

No. A94–080 CV (JKS).

United States District Court, D. Alaska.

March 7, 1995.

Sanford M. Gibbs and Stone, Waller, Jenicek, Brown and Gibbs, Anchorage, AK, for defendant and third-party plaintiff, Alaska Properties and Inv., Inc.

Frank A. Pfiffner and Hughes Thorsness Gantz Powell and Brundin, Anchorage, AK, for third-party defendant F.D.I.C.

## ORDER DENYING MOTION FOR RECONSIDERATION

SINGLETON, District Judge.

## PROCEEDINGS TO DATE

Alaska Properties and Investment, Inc. ("API") seeks reconsideration at Docket No. 87 of an Order at Docket No. 83 dismissing its third party claim against the Federal Deposit Insurance Corporation ("FDIC") and paving the way for remand of this case back to superior court. *See, e.g.,* 28 U.S.C. § 1367(c)(3); 28 U.S.C. § 1441(c). API requests that this Court permit it to amend its third party complaint to assert a claim for equitable apportionment against the United States. *See* AS § 09.17.080. In the exercise of discretion, the Court chose to deny the motion for reconsideration. Because this case has been pending for some time, the Court denied the motion in an Order at Docket No. 88 but will issue this decision to clarify its reasons. In order to understand the motion for reconsideration, it is necessary to summarize the facts and the contentions of the parties.

Anton Zuber ("Zuber") borrowed money from Alaska Continental Bank ("Bank"). The loan was evidenced by a promissory note and secured by a deed of trust covering certain improved real property located in the Collins Subdivision, Municipality of Anchorage, Third Judicial District, in the State of Alaska ("property"). The improvements on the property included a building in which a restaurant operated under the name LeRoy's Family Restaurant ("Restaurant"). The Lees, owners of the Restaurant, leased their premises from Zuber for a period of five years, which was due to expire on March 1, 1990. It appears that the Lees assigned their interest in the lease to Mr. Han K. Pang ("Pang"), who was operating the Restaurant on the leased premises on February 8, 1990.

In the meantime, Zuber defaulted in making payments on the loan and his interest in the property was foreclosed by the Bank. The Bank in turn suffered financial setbacks and the FDIC was appointed as its receiver. On February 8, 1990, the FDIC held the property as receiver.

On that day, Ronald Robinson and some friends drove to the property intending to have a meal at the Restaurant. While approaching the Restaurant, Robinson fell on the ice which had accumulated in the parking lot, suffering the injuries that form the basis for this action. Robinson commenced this

action in state superior court in Anchorage, alleging that Pang, as an occupier of the premises, owed him a duty of care to keep the premises safe from the accumulation of ice. He also sued API, arguing that as agent for the FDIC, API had assumed a duty to keep the premises free of ice. Robinson did not sue FDIC. API moved for summary judgment, contending that it had no arrangement with the FDIC to provide maintenance at the property. During her deposition, an employee of FDIC indicated that API had entered into written contracts with FDIC to manage a number of other properties which the FDIC had acquired either in its corporate capacity or as a receiver, and she believed that API had been informally hired to maintain the property. It appears that based on this testimony Judge Michalski denied API's motion for summary judgment. API then sought and obtained permission to file a third party claim against FDIC for indemnity. API argued that the typical contracts between FDIC and API required each party to indemnify the other against liability caused solely by the fault of the indemnitor and in addition required each party to provide insurance protecting the other under like circumstances. Leave was granted and a third party claim was filed. FDIC then removed this action to this Court. 12 U.S.C. § 1819(b)(2)(D) and 28 U.S.C. § 1441(b).

After further discovery, API renewed its motion for summary judgment, arguing that Robinson's sole theory of recovery was that API had contracted to maintain the premises and thereby assumed a duty to anyone injured by virtue of inadequate maintenance. API continued, arguing that there was no contract and therefore no liability. Docket No. 39. FDIC filed a limited opposition which the Court construed as a cross-motion for summary judgment, arguing that if API was correct, then there was no basis for the third party claim. Docket No. 54. The Court concluded that there was no contract, express or implied, between the FDIC and API, and therefore no basis for the third party complaint as it was written. *See H.F.*

*Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984) (discussing criteria for contracting with the United States and its agencies). Dismissal of the third party complaint will resolve all claims over which this Court had federal question jurisdiction. The Court therefore deferred ruling on API's motion against Robinson until the Court determined whether the parties wished a remand to state superior court. *See* Order at Docket No. 83. The Court reasoned that if the case was going to be remanded, then in the interest of comity, Judge Michalski should determine whether his original order denying API summary judgment should be reconsidered.[1] After hearing from the parties, The Court remanded the case to superior court. This motion for reconsideration followed. Docket No. 87.

## DISCUSSION

■■■ The FDIC is an agency of the United States and as such may only be sued with its consent. Where a claim is made that the United States or one of its agents committed a tort, the United States has, under circumstances relevant here, waived sovereign immunity and authorized suit under the provisions of the Federal Tort Claims Act (FTCA). The FTCA provides the exclusive basis for tort action against the FDIC. *F.D.I.C. v. Meyer,* —— U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *F.D.I.C. v. F.S.S.S.,* 829 F.Supp. 317 (D.Alaska 1993); 28 U.S.C. § 2679(a). Where the law of the state in which the injury occurred allows indemnity or contribution, the United States has waived sovereign immunity to permit a third party claim seeking indemnity or contribution. *United States v. Yellow Cab Co.,* 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). Alaska does not recognize contribution among joint tortfeasors; such avenue is therefore not available in this case. *See, e.g., Carriere v. Cominco Alaska, Inc.,* 823 F.Supp. 680, 685–86 (D.Alaska 1993). At common law, courts recognized various forms of contractual and non-contractual indemnity.

---

1. Judge Michalski never had the opportunity to consider whether API's involvement with the FDIC regarding the property in the absence of a contract, express or implied, created a duty of care. *See Estate of Breitenfeld v. Air-Tek, Inc.,* 755 P.2d 1099 (Alaska 1988). The Court therefore deferred to his judgment.

This Court has held, in part on the application of API, that there is no contract between API and FDIC regarding maintenance of the property and therefore no agreement between them regarding indemnity or insurance against claims of inadequate maintenance. Docket No. 83. Alaska does not recognize non-contractual indemnity. *Vertecs Corp. v. Reichhold Chemicals, Inc.,* 661 P.2d 619, 626 (Alaska 1983). Based on these conclusions, the Court dismissed the third party complaint against the FDIC and eventually remanded this case to state court.

■ In seeking reconsideration, API seems to concede that given the facts developed during discovery, its original third party complaint against the FDIC does not state a claim for relief for either indemnity or contribution which will be recognized under Alaska law. It argues, however, that it should be allowed to amend its complaint to state a claim for equitable apportionment pursuant to AS § 09.17.080.[2] *See, e.g., Benner v. Wichman,* 874 P.2d 949, 955–58 (Alaska 1994). That statute was amended by popular initiative as part of a tort reform movement in order to abolish joint and several liability and to assure that where a plaintiff was injured as a result of the negligence or other fault of numerous tortfeasors, each of whose actions was a concurrent cause of her damages, she could only recover from each tortfeasor in the proportion that his fault played to the total fault of all the persons and entities at fault including the plaintiff herself. In order to implement the initia-

tive, the Alaska Supreme Court has held that a defendant has the right to have all potentially liable parties joined as defendants so that their respective fault may be apportioned. API wishes to assert its right to have the FDIC, an alleged joint tortfeasor, added for this purpose. Generally a request to amend a complaint should be freely given where necessary to serve the ends of justice. FED.R.CIV.P. 15(a). However, an amendment may be denied if it will unduly delay the case or otherwise prejudice a party. *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387–89 (9th Cir.1990).

■ This request presents a very difficult question for resolution. Robinson chose not to sue the FDIC. Federal Rule of Civil Procedure 14(a), upon which the existing third party complaint was based, was amended in 1946 to prevent a third party claim based solely on the third party defendant's liability to the plaintiff. *Toberman v. Copas,* 800 F.Supp. 1239 (M.D.Pa.1992). Thus, there is no specific procedural device in federal practice for implementing the changes to AS § 09.17.080(d) at the present time. *See, e.g., Carriere v. Cominco Alaska, Inc.,* 823 F.Supp. 680, 683, 691 (D.Alaska 1993). Federal Rule of Civil Procedure 14 does not apply because the third party plaintiff is not asserting a derivative liability, i.e., is not asserting that the third party defendant "is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff ..." *Carriere,* 823

2. AS § 09.17.080 as amended provides:

**Apportionment of damages.** (a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating
 (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
 (2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040. [repealed]
 (b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the

extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.
 (c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040 [repealed] and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
 (d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

F.Supp. at 684. On the other hand, the people of Alaska clearly intended to create a system of comparative fault complementary to the system of comparative negligence established in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), *appeal after remand, State v. Kaatz*, 572 P.2d 775 (Alaska 1977). Under current Alaska law, joint and several liability is abolished and the plaintiff may recover from each potential tortfeasor who is joined as a party, only the proportion that his fault bears to her total damages.

 In order to carry out the intent of the initiative, there must be some mechanism to get potential defendants before the court so that the same fact finder can apportion fault among them and apportion fault to the plaintiff. As the Supreme Court pointed out in a similar context, the apportionment of fault is not an exact science. *See, e.g., State v. Kaatz*, 572 P.2d 775, 581–86 (Alaska 1977).

Consequently, the Court previously determined that impleader practice can be modified to provide a procedural vehicle for bringing absent defendants before the court and jury to permit the apportionment of fault. *Robinson v. U–Haul Co.*, 785 F.Supp. 1378, 1380–85 (D.Alaska 1992). That solution is problematical. *See Carriere*, 823 F.Supp. at 687–89;[3] *Benner*, 874 P.2d at 957 n. 17.[4] Having had the benefit of additional argument, the Court is still convinced, for the reasons outlined in *Robinson*, that this is the appropriate course to take. However, it should be made clear that the procedure to be borrowed·from FED.R.CIV.P. 14 is being taken by analogy only, in order to provide some procedural device for implementing AS § 09.17.080 in order to carry out the mandate of *Erie R. Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that the results in diversity cases in federal court be

---

3. Chief Judge Holland noted that FED.R.CIV.P. 14(a) did not lend itself to the use this Court wished to put it, *Carriere* 823 F.Supp. at 684, 687–89, and questioned whether there was any distinction between the phrase equitable indemnity used by Superior Court Judge Dana Fabe, whose reasoning this Court otherwise adopted, and the phrase equitable allocation, which this Court preferred. *Id.* at 688. There is a difference.

Indemnity is a method whereby one litigant transfers an entire liability to another litigant. In the absence of contract, the Alaska Supreme Court favored contribution to indemnity where joint tortfeasors are involved. *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619, 626 (Alaska 1983). Contribution is a method for sharing liability among joint tortfeasors on a per-capita basis. The Alaska initiative appears to repudiate contribution, but the Court believes Chief Judge Holland misunderstood both the reason for the repudiation and its intended effect.

The method of the initiative would be identical to contribution aided by impleader, in effect if, but only if, all joint tortfeasors were solvent and equally at fault. Thus, the initiative's method, which the Court refers to as equitable allocation and the Alaska Supreme Court refers to as equitable apportionment, *see Benner*, 874 P.2d at 956–57 n. 17, in effect changes contribution in only two ways: First, it places the entire risk that one or more of the tortfeasors, whose fault contributed to the plaintiff's damages, is insolvent or otherwise judgment proof or immune on the plaintiff rather than on a joint tortfeasor seeking contribution; and second, it apportions the plaintiff's loss between the plaintiff and the various defendants, and among the defendants solely on the basis of fault and not per-capita. *Borg-*

*Warner v. Avco Corp.*, 850 P.2d 628, 632–33 n. 11 (Alaska 1993). Thus, the allocation or apportionment mandated by the initiative is different from both indemnity and contribution but is nearer to contribution in its effects. Consequently, abolition of contribution does not, as the Chief Judge thought, point to a proper solution to the problems of creating a context in which the fact finder can apportion fault. *See Carriere* 823 F.Supp. at 687 rejected by *Benner*, 874 P.2d at 956–57.

4. In order to address this problem, the Alaska Supreme Court has requested the Standing Committee on·the Civil Rules to review the question of establishing an appropriate procedure for accomplishing what the Alaska Supreme Court calls equitable apportionment. *Benner*, 874 P.2d at 957 n. 17. The court has circulated·the following proposed amendment for comment by the bar:

Alaska Rule of Civil Procedure 14....
(c) **Equitable Apportionment.** In an action which is subject to AS 09.17.080, the defendant, as a third-party plaintiff, may follow the procedure of paragraph [14](a) to bring in a person as a third party defendant who may be wholly or partially liable to the plaintiff. Judgment may be entered against the third party defendant in favor of the plaintiff in accordance with the third party defendant's respective percentage of fault, regardless of whether the plaintiff has asserted a direct claim against the third-party defendant under paragraph (a).

While this Court's Local Rules Committee is considering a similar rule, no action has been taken in either the state court or this Court on the matter at this time.

the same as if the case had remained in state court. The Court finds further support for this conclusion in FED.R.CIV.P. 1 and 83 ("In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.").[5] As the Supreme Court of Alaska notes, the other options are to proceed by means of the state rules patterned on FED. R.CIV.P. 20(a) or 13(G) & (H) and by extension these federal rules where the case is removed to federal court, but no alternative is completely satisfactory. *Benner*, 874 P.2d at 956–57 n. 17.

■ Having determined that API should be able to use some procedure such as FED. R.CIV.P. 14(a) to obtain the benefit of AS § 09.17.080, the question remains: Should the Court permit API to do so in this case, at this time? *Jackson*, 902 F.2d at 1387–89. The Court concludes that it should not. First, the third party complaint as currently drafted does not depend upon the statute. In order to assert the claim to equitable apportionment, API would have to seek leave of court to amend the third party complaint. Second, it is clear that API can only assert a tort claim against the FDIC as manager of the property under the FTCA, but parties bringing FTCA claims must name the United States as defendant; hence, the claim must be against the United States not the agency. *See, e.g., FDIC v. Miller*, 781 F.Supp. 1280, 1287 (text at n. 6) (N.D.Ill.1991).[6]

These problems might be minimized, but more significant problems remain. The FTCA requires that the liability of the FDIC, including presumably its proportion of fault, be determined by the court, not a jury.

A jury trial of everyone else's liability and a judicial determination of the government's liability is not a problem in standard indemnity and contribution cases because resolution of the third party claim does not affect the judgment the plaintiff receives against any defendant. *See United States v. Yellow Cab*, 340 U.S. at 555–56, 71 S.Ct. at 407. Two independent fact finders present a problem in equitable allocation cases because the initiative presupposes that the same fact finder must look at the fault of all potential tortfeasors and apportion fault among them thus apportionment does reduce the plaintiff's judgment. *But see Borg–Warner Corp. v. Avco Corp.*, 850 P.2d 628, 631–32 (Alaska 1993) (interpreting an earlier version of the Tort Reform Act).[7] Where the United States is added for purposes of equitable apportionment, the plaintiff's Seventh Amendment right to a jury determination of the verdict she will receive directly conflicts with the right of the United States to have a judge determine any verdict against it. It would be possible to submit the whole case to the jury and treat the jury determination regarding the United States as advisory. *See, e.g.*, FED.R.CIV.P. 39(c); *Poston v. United States*, 262 F.Supp. 22, 23–24 (D.Hawaii 1966). However, this approach is not free from doubt. *See* 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2335 at 214–15 (2d Civil 1995). In sum, given the uncertainty in the law generally regarding the proper treatment of AS § 09.17.080 and the peculiar problems where the United States is a third party defendant not sued by the plaintiff, the Court was not prepared to exercise its discretion to allow API to amend its third party complaint at this late date to assert an equitable alloca-

---

5. The Court recognizes that one of the reasons that Congress amended FED.R.CIV.P. 14(a), to delete the third-party plaintiff's right to bring in third-party defendants liable only to the plaintiff, was to avoid collusive suits where plaintiffs and defendants would avoid limitations on diversity jurisdiction by having the plaintiff sue a defendant whose citizenship was diverse and then have that defendant bring in non-diverse defendants using FED.R.CIV.P. 14. Any attempt to accommodate AS § 09.17.080 will present that risk.

6. If API had asserted a proper claim against the FDIC, the failure to exhaust administrative claims argument made by the FDIC would not bar this action. *See* 28 U.S.C. § 2675(a) (exempting proper third party claims, cross claims, and counterclaims, from the requirement of exhaustion under the FTCA).

7. *Borg–Warner* is not inconsistent with this interpretation of the initiative. In that case trial of all parties and issues was to the court, a jury was not involved. Thus, despite the order bifurcating the main claim from the third party claims, the same fact finder would address all claims.

tion claim against the United States.[8] *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990) (no abuse of discretion where motion to amend pleading to change theory made late in case was denied); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373–74 (9th Cir.1990) (same). The Court therefore denied the motion for reconsideration. Docket No. 88.[9]

---

[8] The difficulty in reconciling the plaintiff's right to a jury trial against the defendants she chooses to sue with the government's right to a determination by the judge regarding its liability is primarily traceable to the assumption that those subject to equitable allocation or apportionment would be named as parties and would suffer a judgment in favor of the plaintiff whether plaintiff wants one or not. If we treat the United States as a nominal party against whom no judgment would lie, then the problem disappears. *See* Chief Judge Holland's discussion of related problems in *Carriere*, 823 F.Supp. at 688–89 (discussing the plight of the joined "party" whom plaintiff does not wish to sue). Unfortunately, the statute does not seem to view the allocation party as a non-party, leading this Court and the Alaska Supreme Court to assume that the plaintiff, faced with having her judgment against any deep pocket defendant reduced to account for the fault of those joined for purposes of equitable apportionment, will go ahead and amend her complaint to state a claim on the theory that collectable or not she might as well have a judgment. The Alaska Supreme Court's proposed rule modification (revised rule 14(c)) reaches this result by automatically giving plaintiff a judgment against joined defendants whether she sued them or not. *See* n. 4 *supra*. This decision does pose problems where plaintiff ordinarily could not sue the United States without complying with 28 U.S.C. § 2675(a) and also for defendants who cannot be sued by plaintiff because of the statute of limitations, but could be sued by a third party plaintiff alleging a right to equitable apportionment because the claim is alleged to accrue at a later time than an independent claim by plaintiff by analogy to a right to indemnity or contribution. When a claim for equitable apportionment accrues is a question like so many other questions created by the initiative that has yet to be answered.

[9] The Court had earlier denied Pang's motion to assert an implied indemnity claim against the FDIC because of the pendency of trial. Docket No. 53.

API argues that remand would be futile in this case. It reasons that the dismissal with prejudice in favor of the FDIC in this case goes only to the issues of common law contribution and indemnity. Since this Court would not permit API to amend its complaint to seek equitable apportionment, that issue was not decided on the merits. Consequently, API threatens, if this case is remanded, it will amend its complaint to sue the United States for the purpose of seeking an apportionment and trigger a new removal. API notes that it is the imminence of trial that lead this Court to deny Pang's motion to amend and, API presumes, its similar motion. Once the case is remanded trial will no longer be imminent and an amendment will probably be allowed.

This Court is not convinced that remand would be futile. First it is not clear that collateral estoppel would not apply to bar API's claim for apportionment on the theory that equitable apportionment is similar enough to indemnity and contribution that it should have initially been plead. Even if we assume that a claim for equitable apportionment is not barred by the judgment in favor of the FDIC, it is not certain that the Superior Court will permit an amendment at this late date particularly in the face of the procedural obstacles to using equitable apportionment against the United States under the FTCA. It is possible that the Superior Court calendar would permit a fairly rapid resolution of this case in that court, i.e. that trial is imminent. Plaintiff believes this to be the case.