**Nancy ROBINSON, et al., Plaintiffs,**

v.

**U–HAUL COMPANY, et al., Defendants.**

**No. A90–0467 Civil.**

United States District Court,
D. Alaska.

Feb. 21, 1992.

Victor Krumm, Law Office of Hickey & Stewart, Anchorage, Alaska, for plaintiffs.

Joe M. Huddleston, Hughes Thorsness Gantz Powell & Brundin, Anchorage, Alaska, for defendants.

ORDER

SINGLETON, District Judge.

Nancy Robinson and her child (hereafter collectively called "Robinson") sued U–Haul Company of the West Coast of Florida and related companies (hereafter collectively called "U–Haul") for personal injuries. The injuries resulted from an accident in which a tow dolly rented to Robinson by U–Haul allegedly failed. U–Haul has filed a motion asking for a pretrial determination that the Alaska law abolishing joint and several liability applies to this case. *See* Docket No. 31. Robinson has filed an opposition asking that this court hold that the Florida law providing for joint and several liability applies. It appears that the accident in question occurred near Watson Lake, in the Yukon Territory of Canada, on May 27, 1990. It further ap-

pears that the tow dolly was manufactured by Dethmers Manufacturing Company [1] in Iowa, and delivered to Robinson in Florida by U–Haul. When the accident happened, Robinson was travelling between Florida, where she was previously domiciled, to Alaska, where she expected to become domiciled and in fact has since become domiciled.

## CHOICE OF LAW

 In this case, jurisdiction is based on diversity of citizenship. In such a case, a federal district court applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Consequently, the conflict rules of the state of Alaska will govern this case. *See State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1418–19 (9th Cir.1991). The Alaska Supreme Court has discussed choice of law in tort cases in *Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd.*, 705 P.2d 446, 452–53 (Alaska 1985), and in *Armstrong v. Armstrong*, 441 P.2d 699, 703 (Alaska 1968). While it is true that the Alaska Supreme Court cites the Restatement (Second) of Conflicts of Law favorably, it seems clear that the Alaska courts will apply the law of Alaska unless there is a substantial reason to apply the law of another state. *Cf. Ehredt*, 705 P.2d at 453 n. 9 (quoting Restatement (Second) of Conflict of Laws § 6 (1971)).

 There is no good reason to apply the law regarding damages of the Yukon, Florida, or Iowa. Robinson currently resides in Alaska. If her injuries, or those of her child, require public assistance, it will be furnished by the people of Alaska. If she or her child need medical care, it will most likely be provided in Alaska. Robinson has suggested no Florida policy that would be advanced by applying the Florida law of joint and several liability in a case brought by a person who had factually, if not formally, given up her Florida residence in the expectation of acquiring a residence in Alaska.

Further, the people of this state through the initiative process have expressed a strong public policy rejecting joint and several liability. In part, no doubt, this was to protect local defendants against verdicts the initiative's sponsors deemed unfair. In addition, however, it appears that the sponsors believed that allocating loss to the deepest pocket increases the costs to Alaskans of goods and services regardless of the residence of the defendant. The initiative was in part intended to reduce these costs to Alaska's citizens. This policy would be frustrated if Florida law were to be applied.

Finally, applying the law of the form in all but the rare case will serve the interest of certainty, predictability, and uniformity of result and will always provide ease in the determination and application of the law to be applied. This is not the rare case in which the connection between Alaska and the parties is so remote that the law of some other place must be applied in order to conform to the reasonable expectations of the parties, or to avoid injustice. It is highly unlikely that either party did or refrained from doing anything relevant to the accident in this case based upon expectations as to which state's law would apply. Evaluating this case in light of Restatement (Second) of Conflicts of Laws § 145 and § 6 (1971), I conclude that Alaska law rather than Florida law should govern the proper apportionment of damages among those potentially responsible for the accident.

## APPLICATION OF ALASKA LAW

 Consequently, A.S. § 09.17.080 will govern this case. The statute provides in full:

**Sec. 09.17.080. Apportionment of damages.**

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.-040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if

---

**1.** Dethmers Manufacturing Company is not a party to this lawsuit.

there is no jury, shall make findings, indicating

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relations between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

A.S. § 09.17.080 (Supp.1991).[2]

The parties dispute the proper interpretation of this statute. I believe Superior Court Judge Dana Fabe properly interpreted the statute in *Dunaway v. The Alaskan Village, Inc.*, Alaska State Superior Court Case No. 3AN–90–3526 (decision dated July 25, 1991). Judge Fabe concluded that A.S. § 09.17.080 only permitted the allocation of responsibility among those joined as parties to the action and that the people who sponsored the initiative that enacted the statute clearly did not intend to give a plaintiff the right to prevent joinder of potentially responsible parties.[3] Nevertheless, the statute itself did not establish a procedure for bringing potentially liable parties before the court. Consequently, Judge Fabe concluded that she should recognize in each defendant a right to implied indemnity[4]

---

**2.** This statute was enacted as a result of the vote of Alaska's citizens on a 1987 ballot initiative. It became effective on March 5, 1989. It modified a statute previously enacted by the legislature in 1986 by substituting pure several liability for the previous modified joint and several liability scheme. The prior statute was essentially identical to the current statute except with regard to paragraph (d). The prior paragraph (d) provided:

(d) The court shall enter judgment against each party liable on the basis of joint and several liability, except that a party who is allocated less than 50 percent of the total fault allocated to all the parties may not be jointly liable for more than twice the percentage of fault allocated to that party.

A.S. § 09.17.080(d) (1986). *See Lake v. Construction Machinery, Inc.*, 787 P.2d 1027, 1029–30 & n. 6 (Alaska 1990).

**3.** As Judge Fabe noted, the statute on its face permits allocation of fault only among those who are parties to the action. A.S. § 09.17.-080(a)(2). This provision requires that the finder of fact first determine the "total fault of all of the parties to each claim." A.S. § 09.17.-080(a)(2). This fault is then "allocated to each defendant, third-party defendant, and person *who has been released from liability* under A.S. § 09.16.040." *Id.* (emphasis added). The underlined language indicates that even persons who are immune from liability pursuant to settlements reached under the now-repealed contribution statute are to be made parties for the purposes of allocation of fault. This much is made clear by the fact that, in making this allocation, the trier of fact is to consider both the "nature of the conduct of each *party* at fault" and the extent of the causal relationship between the conduct and the injury. This requirement of joinder of an immune person buttresses this Court's conclusion that the statute contemplates that all actors who are potentially liable should be before the trier of fact as parties.

**4.** Judge Fabe's opinion employs the terms of art, "implied indemnity" and "equitable indemnity." *See Dunaway v. The Alaskan Village, Inc.*, Alaska State Superior Court Case No. 3AN–90–3526 Civil, at 7. The Court believes that the term "equitable allocation" more accurately describes the right which a defendant/third-party plaintiff has to join third-party defendants, so that liability might be accurately apportioned. Of course, the defendant/third-party plaintiff will not be entitled to recover against the third-party defendant, since the newly joined party's duty, if any, was to the original plaintiff rather than to the third-party plaintiff. If the third-party plaintiff were so entitled to recover, then the terms "im-

against other potentially liable individuals whom plaintiff chose not to join in the action. Judge Fabe reasoned that this right to implied indemnity triggered a right in the defendants to bring third-party actions against those potentially responsible under Alaska Rule of Civil Procedure 14, which in relevant part is virtually identical to Federal Rule of Civil Procedure 14.

I recognize that the federal rule, like the state rule, only permits third-party claims where the defendant/third-party plaintiff contends that the third-party defendant "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Federal Rule of Civil Procedure 14. Strictly speaking, the third-party plaintiff in this case would be seeking an apportionment of damages due the original plaintiff and not enforcement of an obligation independently owed by the third-party defendant to the third-party plaintiff. Thus, the third-party plaintiff would not be entitled to recover any damages in contribution, since by operation of A.S. § 09.17.080(d), judgment is entered against it only in proportion to its fault. *See* Note 4, *supra.*

The people of Alaska abolished contribution between joint tortfeasors at the same time they abolished joint and several liability. Nevertheless, I think Judge Fabe's resolution of the procedural problems posed by the statute is appropriate. If there is no way to get a potential defendant before the court whom the plaintiff does not wish to sue,[5] the obvious intention of the people is frustrated. Judge Fabe's solution avoids the difficulties inherent in U–Haul's alternative approach under Federal Rule of Civil Procedure 19. U–Haul has sought the joinder, as persons to be joined if feasible, of other possibly liable persons. This raises some practical difficulties discussed by Judge Fabe in her opinion in *Dunaway.* First, if potentially liable parties are joined as "persons to be joined if feasible" under Federal Rule of Civil Procedure 19(a), who is to be responsible for their attorney's fees if they are exonerated of fault?[6] Second, must a court evaluate the validity of defendant's assertions before permitting joinder? Third, may a court compel a plaintiff to amend her complaint to name such potentially liable persons, even if plaintiff is of the opinion that such a complaint would not pass muster under Federal Rule of Civil Procedure 11's

plied contribution" or "equitable contribution," rather than "implied indemnity" or "equitable indemnity," would be appropriate, because merely a portion rather than all of the liability is being shifted. This right of recovery, however, would be predicated on the third-party plaintiff having paid more than its fair share in the first instance, a prerequisite which is clearly inconsistent with the language and the discernible intent of the several liability statute.

Despite the absence of any right of recovery to accompany the right of "equitable allocation," third-party practice is the appropriate vehicle for the action since the third-party plaintiff does stand to benefit from the joinder of other potentially liable actors. If the original plaintiff eventually desires to file an amended complaint naming the newly joined third-party defendants, they may have certain defenses including, *inter alia,* the statute of limitations, since the applicable statute is not tolled until the original plaintiff commences her action. *See generally* 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1459 (1990) ("Plaintiff's Rights Against the Third–Party Defendant").

5. It is a venerable principle, long enshrined in the common law, that a plaintiff is master of her complaint. *Caterpillar Inc. v. Williams,* 482

U.S. 386, 398–99, 107 S.Ct. 2425, 2432–33, 96 L.Ed.2d 318 (1987) (Brennan, J.). Long ago, Justice Holmes recognized that "the plaintiff is absolute master of what jurisdiction he will appeal to." *Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915) (Holmes, J.); *cf. also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913) (Holmes, J.) ("[T]he party who brings a suit is master to decide what law he will rely upon."). These edicts retain their vitality today. *United States v. Mottaz,* 476 U.S. 834, 850, 106 S.Ct. 2224, 2233–34, 90 L.Ed.2d 841 (1986) (Blackmum, J.).

6. If a court forces a plaintiff to sue judgment proof, *e.g.,* uninsured individuals, then plaintiff stands to accomplish nothing if she prevails. Moreover, she will pay substantial attorney's fees under the "English Rule" adopted in Alaska as Alaska Rule of Civil Procedure 82 if she is unable to convince a jury that at least some of the responsibility rests upon each of the potential defendants. The use of third-party practice to facilitate "equitable allocation" avoids these difficulties.

requirement that a pleading be "well grounded in fact and [be] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law?" Federal Rule of Civil Procedure 11. Fourth, how is the defendant to effectively raise theories adverse to a party technically aligned with it in the litigation? To put it another way, how may the court allocate the responsibility to frame the cause of action and the theories presented to the finder of fact? As Judge Fabe recognized, "[u]se of the concept of implied or equitable indemnity allows a defendant, as third-party plaintiff, to conduct and remain responsible for the consequences of the claims which it wishes to bring." *Dunaway v. The Alaskan Village, Inc.*, Alaska State Superior Court Case No. 3AN–90–3526 Civil, at 9 n. 1 (decision dated July 25, 1991).

Under Judge Fabe's holding, if the defendant wishes to have other parties joined, it is the defendant who must join them and pay their attorney's fees if the party joined is found not to be liable. For this reason, Judge Fabe's rule properly apportions risk between the defendant who wants the third-party defendant in the case and the plaintiff who does not. Finally, Judge Fabe's rule serves to discourage defendants from trying to persuade a jury to apportion damages to a person who is clearly not liable.

U–Haul relies heavily upon the Order of Superior Court Judge Larry Zervos in *Owens v. Robbins*, Alaska State Superior Court Case No. 1SI–09–0354 Civil (order date September 27, 1991). Judge Zervos concluded that A.S. § 09.17.080 is properly construed to authorize allocation of fault by the trier of fact to any actor in the occurrence causing the injuries, including non parties. To avoid injustice and a chaotic trial, Judge Zervos required that the non-party actors be identified in advance by the party seeking to charge them with fault. Judge Zervos reasoned:

> This conclusion is based on the court's understanding of the intent behind A.S. 09.17.080(d). This subsection was the result of an initiative voted in by the citizens in 1988. The clear intent of the

initiative was to repeal the Contribution Among Joint Tortfeasor's [sic] Act and to eliminate joint liability. To require the jury to allocate fault only among those parties to the suit would allow the plaintiff to effectively avoid an allocation of fault among all the wrongdoers. In addition, since contribution no longer exists and since the Supreme Court has rejected equitable indemnity, the defendants can not bring in persons who share in the responsibility for the injury. To avoid this result and to attempt to meet the clear directive of the initiative, the court concludes that fault may be allocated among non-parties. To avoid injustice, the non-parties must be previously identified by name or activity as being responsible for part or all of the injury. In this case, fault may be allocated among all named parties (defendants or third-party defendants) even if these parties are dismissed from the action by this order or subsequent order. No other non-party will be considered for fault allocation unless good cause can be established by motion and affidavit.

*Owens v. Robbins*, Alaska State Superior Court Case No. 1SI–90–0354 Civil, at 2–3 (order dated September 27, 1991).

Judge Zervos clearly relied heavily upon the refusal of the Alaska Supreme Court to recognize partial non-statutory (or implied) indemnity between concurrently negligent tortfeasors. *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619, 626 (Alaska 1983). However, the *Vertecs* decision rested on the existence of a statutory contribution scheme. In *Vertecs*, the appellant, an installer of insulation, sought contribution and indemnity from the appellee, a supplier of insulation which allegedly was faulty and enhanced fire damage to the plaintiffs' building. The appellee, Reichhold Chemicals, settled with the plaintiffs and obtained a release from all further claims. Vertecs later sought contribution and indemnity from Reichhold. *Vertecs*, 661 P.2d at 619.

The trial judge held that Alaska law did not provide for indemnity between concurrently negligent tortfeasors. Since only

fault-based claims were alleged against Vertecs, the trial judge ruled that Vertecs could not obtain indemnity. The trial judge also determined that contribution could not be had because Reichhold had settled in good faith with the plaintiffs.[7] Vertecs appealed only the denial of noncontractual indemnity. *Vertecs*, 661 P.2d at 621. Vertecs argued that the Alaska Supreme Court should recognize, as a concomitant of the comparative negligence regime adopted in *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), an implied non-statutory indemnity scheme.

The Alaska Supreme Court declined to do so. *Vertecs*, 661 P.2d 619, 626 (Alaska 1983). It was loath to interfere with a statutory contribution scheme.[8] To permit implied indemnity against Reichhold would upset Reichhold's statutory right to a release from all further liability after having entered into a good faith settlement with the plaintiffs. This would effectively vitiate the contribution statute's ability to fulfill the legislative goal of promoting settlements.

However, the contribution statute was repealed when the present statute providing for pure several liability was enacted, on March 5, 1989. The repeal undermined the *Vertecs* Court's reasoning in two significant ways. First, it expressly permitted joinder of those who had previously been released, *i.e.*, those who had settled. *Cf.* Notes 3 & 7, *supra.* Second, it substituted a system of allocation of responsibility for the plaintiff's injuries to all persons at fault in place of the previous system of joint liability with a right to contribution. The repeal left the procedural gap accurately described by Judge Fabe. This Court believes that the Alaska Supreme Court, confronted with the procedural difficulties inherent in attributing fault to nonparties, would adopt Judge Fabe's procedural solution in order to vindicate the voters' expectation that all responsible parties pay, and that each responsible party pay only for his or her proportionate fault. The decision of the Alaska Supreme Court in *Lake v. Construction Machinery, Inc.*, 787 P.2d 1027 (Alaska 1990), is not to the contrary. In *Lake*, the trial court refused to strike an alleged tortfeasor's affirmative defense that the petitioner's employer was comparatively negligent. The employer and employee argued that this was required in light of A.S. § 23.30.055,[9] which provides employers paying worker's compensation with immunity from all further liability to the employer or to any other person otherwise entitled to recover damages from the employer on account of the injury.

The Alaska Supreme Court agreed that the exclusive liability provision would preclude entry of a judgment against the manufacturer. *Lake*, 787 P.2d at 1031. However, this did not bar the alleged tortfeasor from attempting to prove that the employer was solely responsible for the injuries to the employee, since this would by implication exonerate the alleged tortfeasor.

Our refusal to abrogate the workers' compensation scheme does not necessarily render evidence of employer negli-

---

7. Former A.S. § 09.16.040(2) provided that no contribution could be had against a tortfeasor who had entered into a good faith settlement. The current pure several liability statute, A.S. § 09.17.080(a), requires allocation of fault to "persons who have been released under AS 09.-16.040," *i.e.*, who have settled.

8. *Cf. State v. Wien Alaska Air*, 619 P.2d 719 (Alaska 1980):

 As we pointed out in *Arctic Structures,* we are *most reluctant to modify an existing legislative scheme in order to achieve an equitable result.*
 *State v. Wien Alaska Air*, 619 P.2d 719, 720 (Alaska 1980) (citing *Arctic Structures v. Wedmore*, 605 P.2d 426 (Alaska 1979)).

9. A.S. § 23.30.055 provides in part: .

 **Sec. 23.30.055. Exclusiveness of liability.**
 The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.
 A.S. § 23.30.055 (1990). This section serves the important legislative purpose of insulating a complying employer from contribution. *Fellows v. Tlingit–Haida Regional Elec. Auth.*, 740 P.2d 428 (Alaska 1987).

gence inadmissible. A third party tort-feasor may escape liability by proving that it was not negligent or that its negligence did not proximately cause the employee's injury. Thus, evidence of the employer's negligence may be relevant and admissible to prove that the employer was entirely at fault, or that the employer's fault was a superseding cause of the injury. However, AS 09.17.080 presents a difficult factual choice: the finder of fact may allocate *all* or *none* of the total fault to the employer. It may not allocate only a portion of the total fault to the employer. Moreover, members of the bench and bar must take care in preparing jury instructions to prevent a panel from attributing to the employee any negligence of the employer.

*Lake*, 787 P.2d at 1031 (emphasis in original).

The *Lake* Court did not consider A.S. § 09.17.080 as amended by the initiative. The initiative may well have undermined some of the *Lake* Court's guidance regarding appropriate jury instructions. Nevertheless, the *Lake* Court's reasoning illustrates that accurate allocation of portions of fault to actors who are not parties to the litigation is too difficult. In *Lake*, the exclusive liability provision of A.S. § 23.30.-055 deprived any allocation of less than 100% fault to the employer of any significance. In the absence of total liability on the part of the employer, which would by implication necessarily exonerate the other defendants, the trier of fact would be required to allocate the total liability among the parties to the litigation, and could not reduce it by the percentage of liability attributable to the employer.[10] Thus, *Lake* does not contemplate that the trier of fact should attempt to engage in the difficult task of allocating a portion of fault to an actor who is not a party to the litigation.[11]

Because the allocation of a portion of fault to non-parties is not permitted by the statute, nor practical in the courtroom, the Court adopts Judge Fabe's procedural solution to the problem of potentially liable actors not joined by the plaintiff. The defendant must join any potentially liable actors and articulate in third-party complaints the manner in which those actors caused the plaintiff's injuries. This having been done, the trier of fact will then be able to accurately allocate a portion of fault to each party.[12]

10. The total fault is to be allocated to the parties in the litigation because the employer is entitled to reimbursement of workers' compensation paid to an employee out of the proceeds of a suit. *See* A.S. § 23.30.015(g). That statute provides, in part:

> (g) If the employee or the employee's representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A), (B), and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter.

A.S. § 23.30.015(g).

11. In *Lake*, the employer *was* a party to the litigation, pursuant to an express indemnity clause. However, the Alaska Supreme Court's method of determining of the existence *vel non* of the employer's liability would remain the same even where the employer could not be joined as a party due to its statutory immunity from contribution or indemnity. The *Lake* Court stated:

> It is irrelevant that the employer in this case is a third-party defendant based on an express

indemnity agreement. As a result of the exclusive liability provision, an employer may be joined as a third-party defendant only when another party asserts an express indemnity claim against it. *See Manson–Osberg Co. v. State*, 552 P.2d 654, 658–59 (Alaska 1985); *see also Providence Washington Ins. Co. v. DeHavilland Aircraft Co. of Canada*, 699 P.2d 355, 357–58 (Alaska 1985); *Golden Valley Elec. Ass'n v. City Elec. Serv.*, 518 P.2d 65, 69 (Alaska 1974). However, the fact that the employer is a third-party indemnity defendant in any particular case is a fortuity which does not alter the rule applicable to employer fault generally, even though it might affect the ultimate liability of the parties to the agreement.

*Lake*, 787 P.2d at 1031.

12. The federal courts have a strong policy favoring the pretrial elimination of insubstantial issues and non-liable parties through dispositive motions. Where a defendant brings in a solvent actor who was clearly not at fault or whose fault, if any, clearly did not contribute to the plaintiff's loss, that actor can bring a motion for summary judgment and if successful may recover attorney's fees from the defendant/third-party plaintiff, under Alaska Rule of Civil Procedure 82 incorporated by reference in Local Gen-

IT IS THEREFORE ORDERED:

The law of Alaska, including A.S. § 09.-17.080, will govern this case. Defendant's motion to join indispensable parties under Federal Rule of Civil Procedure 19, at Docket No. 31, is DENIED. U–Haul may file a complaint in conformity with Federal Rule of Civil Procedure 14 against any person or entity that it believes shared in causing Robinson's injuries. Robinson's motion to declare Florida law controlling, at Docket No. 33, is DENIED.

eral Rule 21.1. Where the defendant brings in an insolvent actor who elects not to participate but who is clearly without fault or whose fault, if any, clearly did not contribute to the plaintiff's loss, then the plaintiff should be able to remove that insolvent actor from further jury consideration by moving for summary judgment. If successful, the plaintiff would then recover attorney's fees from the defendant/third-party plaintiff, as a prevailing party as to that actor.

A plaintiff's power to obtain pretrial disposition of sham third-party complaints seeking "equitable allocation" will serve as a check on a defendant's wholesale impleader of bystanders in order to confuse the jury. The plaintiff's power to eliminate sham parties by dispositive motions also supports Judge Fabe's decision to make potentially responsible actors parties in contrast to Judge Zervos' decision to merely require pretrial identification. While an alert plaintiff might, under Judge Zervos' approach, seek to eliminate a sham actor by a motion *in limine,* such a procedure would be more cumbersome.

One difficult problem remains, however. The defendant may bring in an insolvent third-party defendant who was substantially at fault and whose actions did substantially contribute to the plaintiff's loss. In such a case, the actor cannot be eliminated by a pretrial dispositive motion. Under joint and several liability, it would not matter since each responsible defendant would be liable for the plaintiff's total damages discounted only by the plaintiff's comparative fault. As the Alaska Supreme Court indicated in discussing the legislative predecessor to A.S. § 09.17.080(d), *see* Note 2, *supra,*

> [Section (d) ] represented a fair compromise limiting the potential liability [to twice the percentage of fault allocated to that party] of a tortfeasor guilty of only a small degree of [fault] while at the same time permitting an injured plaintiff to recover a substantial portion of his or her damages.

*Lake,* 787 P.2d at 1031 n. 9.

The initiative rejected the compromise and limited the plaintiff to strict several liability. If anything, this change underscores the concern expressed in *Lake* that jury instructions be carefully drafted and, by extension, that questions regarding who has what burden of proof be determined prior to the trial.